IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITIZENS BANK OF PENNSYLVANIA,<br>*Plaintiff,*<br>vs.<br>KEVIN O. HAGAMIN, SR.,<br>BRIAN G. JONES,<br>SANIYAH'S HAIR COMPANY, and<br>JOHN DOES 1-100<br>*Defendants* | CIVIL ACTION NO.<br>Non-Jury |

## COMPLAINT

Plaintiff Citizens Bank Of Pennsylvania ("Citizens Bank"), by its attorneys Obermayer Rebmann Maxwell & Hippel LLP, complains of defendants Kevin O. Hagamin, Brian G. Jones, Saniyah's Hair Company, and John Does 1-100 as follows:

### Nature Of Action, Parties And Jurisdiction

1. This is an action to recover money defendants stole from plaintiff. Defendants Hagamin and Jones illegally withdrew funds from the bank accounts of plaintiff's senior citizen customers and then distributed the money to themselves and to defendants Saniyah's Hair Company and John Does 1-100. These thefts by defendants have resulted in the loss to plaintiff of at least $587,394.43, plus interest.

2. Plaintiff Citizens Bank of Pennsylvania is a Pennsylvania corporation with a principal place of business at 2001 Market Street, Philadelphia, Pennsylvania. Plaintiff's chief business is retail banking, including the provision of personal checking, savings, and certificate of deposit accounts to customers.

3. Defendant Kevin O. Hagamin, Sr. is a citizen of the State of New Jersey, residing at 201 Berkley Ct., Camden, New Jersey, 08103.

513778

4. Defendant Brian G. Jones is a citizen of the State of New Jersey, residing at 620 South 5th Street, Camden, New Jersey, 08103.

5. Defendant Saniyah's Hair Company ("Saniyah"), upon information and belief, is a business entity owned and controlled by Jones with a principal place of business at 1178 Haddon Ave., Camden, New Jersey, 08103. Saniyah's consists of one or more barber or hair styling shops or salons.

6. Saniyah is an alter ego and/or agent of Jones.

7. At all times relevant, Hagamin and Jones were principals and agents of each other and acted in concert and at the direction of each other.

8. Defendants John Does 1-100 are individuals or businesses, form unknown, that participated in Hagamin and Jones' illegal scheme to steal money from plaintiff and/or who received or benefited from the funds stolen from plaintiff.

9. At all times relevant, defendants conspired with each other to mislead and defraud plaintiff.

10. At all times relevant, defendants were and are jointly and severally liable.

11. Jurisdiction is proper in this Court. Under 28 U.S.C. § 1332, there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391(a).

## FACTS

### Hagamin And Jones' Scheme
### To Steal From Plaintiff's Customers

13. Plaintiff hired Hagamin in March 2002 as a customer service representative. Plaintiff later promoted Hagamin to assistant branch manager. Hagamin at all relevant times worked in branches of plaintiff's bank located in Pennsylvania.

14. Hagamin's positions at plaintiff's bank provided him with the means, but not the authority, to transfer customer funds.

15. Hagamin's positions at plaintiff's bank provided him with the ability, but not the authority, to access and alter customer account information.

16. Hagamin and Jones were high school classmates and friends.

17. In or before September 2002, Hagamin and Jones conspired and agreed to use Hagamin's position at plaintiff's bank to steal money from the accounts of plaintiff's customers.

18. Hagamin knew that it was improper and illegal for him to withdraw, receive, distribute and/or transfer customer funds or to alter customer account information. Hagamin knew that he required customer authorization, or approval from his superiors at plaintiff's bank, to conduct any transaction involving any customer account or to change customer information.

19. Jones knew that it was improper and illegal for Hagamin to withdraw, receive, distribute and/or transfer customer funds or to alter customer account information. Jones knew that Hagamin required customer authorization, or approval from Hagamin's superiors at plaintiff's bank, to conduct any transaction involving any customer account or to change customer information.

20. Jones knew that it was improper and illegal for him to withdraw, receive, distribute and/or transfer money belonging to plaintiff's customers.

21. Hagamin and Jones began to execute their plan to loot the bank accounts of plaintiff's customers in September 2002.

22. Beginning in September 2002 and continuing until December 2003, Hagamin and Jones intentionally withdrew funds from the personal checking, money market, savings and certificate of deposit accounts of plaintiff's customers. Hagamin and Jones had no authority, consent, or lawful justification from anyone for any of these transactions.

23. Hagamin and/or Jones withdrew customer funds through the use of hundreds of secret electronic transfers, automatic teller machine transactions, cashier checks, customer checks, and cash withdrawals, as well as through other, unknown means.

24. Hagamin and/or Jones withdrew customer funds and then deposited them into accounts at plaintiff's bank controlled by Jones, including the account of Saniyah. Upon information and belief, Jones later shared this money with Hagamin, Saniyah's, and John Does 1-100.

25. Hagamin and/or Jones withdrew customer funds as cash. Upon information and belief, Hagamin and Jones later shared this money with each other as well as Saniyah's and John Does 1-100.

26. Hagamin and/or Jones withdrew customer funds and then disbursed them to numerous others, whose relationship to defendants is unknown.

## Hagamin And Jones' Efforts
## To Conceal Their Thefts

27. As part of their scheme to steal customer funds, Hagamin and Jones acted in secret and concealed their wrongdoing to prevent any action to stop them.

28. Hagamin and Jones withdrew customer funds and distributed them to defendants and unknown others in secret.

29. To make it appear that no funds had been withdrawn, Hagamin and/or Jones secretly transferred money between the accounts of plaintiff's customers. Hagamin and/or Jones had no authority for these transactions.

30. Hagamin and/or Jones secretly falsified and/or forged and/or altered customer authorizations for the withdrawals and transactions they executed.

31. Hagamin and/or Jones secretly changed and falsified account information, including customer addresses. This caused plaintiff's bank to send account statements showing the unauthorized transactions to Hagamin instead of to plaintiff's customers.

32. Hagamin and Jones purposefully victimized plaintiff's senior citizen customers, on the assumption that senior citizens would be less likely to report irregularities in their bank accounts or to seek redress for lost funds.

33. Many of the withdrawals caused by Hagamin and/or Jones secretly sent funds from the accounts of plaintiff's customers in Pennsylvania across state lines to New Jersey, where Hagamin and Jones believed they could more easily hide their ill-gotten gains.

34. Hagamin and/or Jones secretly laundered the money they stole through defendants Saniyah's Hair Company and John Does 1-100.

35. Hagamin and Jones both lied to plaintiff when questioned about the hundreds of unauthorized withdrawals and transfers they had executed, about the changes they had made to customer account information, and about the disposition of the money they had stolen.

### Plaintiff's Losses

36. Plaintiff fired Hagamin in December 2003, after discovery and investigation of the theft and fraud that he, Jones and defendants had perpetrated.

37. Hagamin and Jones illegal withdrawals from the bank accounts of plaintiff's customers totaled at least $587,394.43, plus interest.

38. Plaintiff has and will repay its customers for all of their losses and make its customers whole. Therefore, it is plaintiff that has sustained the entire loss from defendants.

39. Plaintiff has also expended significant resources investigating and attempting to remedy Hagamin and Jones' misconduct.

### CAUSES OF ACTION

### COUNT I
### Conversion
### (All Defendants)

40. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

41. Plaintiff owns and has a right to immediate possession of the funds Hagamin and Jones withdrew from the bank accounts of plaintiff's customers.

42. Defendants have deliberately asserted dominion over the funds Hagamin and Jones withdrew from the bank accounts of plaintiff's customers.

43. Defendants' actions have interfered with plaintiff's ownership of the funds and plaintiff's right to immediate possession.

44. Defendants lack authority or consent for their assertion of dominion over the funds.

45. Defendants lack lawful justification for their assertion of dominion over the funds.

46. Defendants' assertion of dominion over the funds is outrageous.

47. As a result of defendants' assertion of dominion over the funds, plaintiff suffered and continues to suffer significant damages.

WHEREFORE, plaintiff requests judgment in its favor for compensatory damages in excess of $75,000, plus costs of suit, punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II
## Fraud
## (Defendants Hagamin and Jones)

48. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

49. Hagamin and Jones secretly withdrew and distributed funds from the bank accounts of plaintiff's customers, secretly transferred funds between accounts, secretly altered, falsified and/or forged customer authorizations, approvals, and information, including customer addresses, secretly sent funds out of state, secretly laundered money, secretly received money, and then lied and attempted to hide the fact that they had stolen the money.

50. Hagamin had a duty to disclose to plaintiff all unauthorized withdrawals and transfers of funds from the bank accounts of plaintiff's customers and to disclose any conspiracy to steal customer funds.

51. Hagamin and Jones acted with the intent to conceal their illegal scheme and to prevent any action to stop them. Hagamin and Jones could not have perpetrated their illegal scheme without their deceptive acts.

52. Plaintiff reasonably relied upon Hagamin's pretended honesty and loyalty and thus was misled by Hagamin's intentional falsehoods and deceptive acts.

53. Plaintiff would have halted Hagamin and Jones' illegal scheme plaintiff had known of the unauthorized transfers.

54. Hagamin and Jones' deceptive acts were outrageous.

55. As a result of Hagamin and Jones' intentionally deceptive acts, falsehoods, and misrepresentations, plaintiff suffered and continues to suffer significant damages.

WHEREFORE, plaintiff requests judgment in its favor for compensatory damages in excess of $75,000, plus costs of suit, punitive damages, and such other relief as this Court may deem just and proper.

### COUNT III
### Unjust Enrichment
### (All Defendants)

56. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

57. Hagamin and Jones withdrew funds from the bank accounts of plaintiff's customers and distributed the funds to themselves and others without authorization from plaintiff or plaintiff's customers.

58. It was illegal and improper for Hagamin and Jones to withdraw funds from the bank accounts of plaintiff's customers and distribute the funds to themselves and others.

59. Defendants have been unjustly enriched by the receipt of funds withdrawn from the bank accounts of plaintiff's customers.

60. It is unjust for defendants to keep the funds withdrawn from the bank accounts of plaintiff's customers.

61. It is unjust for defendants to keep any benefit they have derived from the funds withdrawn from the bank accounts of plaintiff's customers.

62. Plaintiff has had to make good the funds that defendants have illegally withdrawn from the bank accounts of plaintiff's customers.

WHEREFORE, plaintiff requests judgment in its favor for restitution of funds in excess of $75,000, plus costs of suit, and such other relief as this Court may deem just and proper.

## COUNT IV
### Interference With Business Relations
### (Defendants Hagamin and Jones)

63. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

64. A business, contractual, and fiduciary relationship exists between plaintiff and its customers.

65. Hagamin and Jones are aware of plaintiff's business, contractual, and fiduciary relationship relationships with its customers.

66. Hagamin and Jones' actions intentionally and purposefully interfered with and harmed plaintiff's business, contractual, and fiduciary relationship relationships with its customers.

67. Hagamin and Jones' actions were improper and not privileged.

68. As a result of Hagamin and Jones' actions, plaintiff suffered and continues to suffer significant damages, including but not limited to the cost and expense of investigating and remedying defendants' actions, making plaintiffs' customers whole, repairing plaintiffs' relationship with its customers, adverse publicity, and recovering the money stolen by defendants.

WHEREFORE, plaintiff requests judgment in its favor for compensatory damages in excess of $75,000, plus costs of suit, punitive damages, attorneys' fees, and such other relief as this Court may deem just and proper.

## COUNT V
## Breach of Duty of Loyalty
## (Defendant Hagamin)

69. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

70. As plaintiff's employee and agent, Hagamin owed plaintiff a duty of loyalty.

71. Hagamin was obliged to deal with plaintiff in good faith and to act at all times in plaintiff's best interests and in the best interests of plaintiff's customers.

72. Plaintiff placed trust and confidence in Hagamin.

73. By stealing and/or allowing the theft of customer funds by defendants, Hagamin breached his duty of loyalty to plaintiff.

74. By concealing the theft of customer funds by defendants, Hagamin breached his duty of loyalty to plaintiff.

75. Hagamin's breach of his duty of loyalty was outrageous.

76. As a result of Hagamin's breach of his duty of loyalty, plaintiff suffered and continues to suffer significant damages, including but not limited to the cost and expense of investigating and remedying defendants' actions, making plaintiffs' customers whole, repairing plaintiffs' relationship with its customers, adverse publicity, and recovering the money stolen
by defendants.

WHEREFORE, plaintiff requests judgment in its favor for compensatory damages in excess of $75,000, plus costs of suit, punitive damages, attorneys' fees, and such other relief as this Court may deem just and proper.

### COUNT VI
### Conspiracy
### (All Defendants)

77. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

78. Defendants agreed to act in concert to steal from the bank accounts of plaintiff's customers.

79. Defendants performed overt acts in furtherance of their improper agreement.

80. Defendants' overt actions were not privileged.

81. As a result of these overt actions, plaintiff suffered and continues to suffer significant damages.

WHEREFORE, plaintiff requests judgment in its favor for compensatory damages in excess of $75,000, plus costs of suit, punitive damages, and such other relief as this Court may deem just and proper.

>Respectfully submitted,
>
>*Jonathan W. Hugg* (signature)
>
>Jonathan W. Hugg, Esquire
>Obermayer, Rebmann, Maxwell & Hippel, LLP
>1617 JFK Boulevard, 19th floor
>Philadelphia, PA  19103
>Tel. (215) 665-3000
>Fax (215) 665-3165
>
>Attorneys for Plaintiff,
>Citizens Bank Of Pennsylvania

Dated:  February 20, 2004